IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01718-GPG-CYC

MARIA ROSALES,

     Plaintiff,

v.

AURORA POLICE OFFICER E. SANDBERG, in his individual and official capacities,
AURORA POLICE OFFICER S. ZAHOUREK, in his individual and official capacities, and
CITY OF AURORA,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Cyrus Y. Chung, United States Magistrate Judge.**

     Defendant City of Aurora and defendants Sandberg and Zahourek, Aurora Police Department ("APD") officers, move to dismiss the plaintiff's claims against them. ECF No. 27. They contend that the Court lacks subject-matter jurisdiction over the plaintiff's fourth claim and seek to dismiss claims one, two, and three for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The officers also assert a defense of qualified immunity. Because the plaintiff has failed to plead her federal claims adequately, the Court recommends that the motion be granted and that the District Judge decline to exercise supplemental jurisdiction over the state-law claims.

## BACKGROUND

     According to the amended complaint, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on June 18, 2023, the plaintiff went to a gas station in Aurora, Colorado. ECF No. 1 ¶ 1. An APD cruiser drove by and the defendant officers leered at the plaintiff. *Id.* ¶ 2. After the plaintiff pulled out of the gas station, the officers

initiated a traffic stop. *Id*. ¶ 5. The plaintiff, a Mexican-American woman, was afraid even though she had a friend in the car with her. *Id*. ¶¶ 1, 6.

The officers asked for her driver's license and commented on the vehicle's lack of a front license plate. *Id*. ¶ 7. When the plaintiff asked why she was stopped, Zahourek told her it was because the vehicle did not have a front license plate. *Id*. ¶ 8. After examining her driver's license, the officers asked the plaintiff to get out of the vehicle. *Id*. ¶¶ 9–10. Zahourek told the plaintiff there was a warrant for her arrest. *Id*. ¶ 10. When the plaintiff asked about the warrant, the officers stated that she had active warrants for jumping bail, being a fugitive, and other crimes. *Id*. ¶ 11–12. The plaintiff was anxious and began to have a panic attack. *Id*. ¶ 15.

Zahourek handcuffed the plaintiff and patted her down. *Id*. ¶ 17. The plaintiff was then placed in the back seat of his cruiser, where she saw that the individual on the screen of the cruiser's computer was not her and so informed the officers. *Id*. ¶¶ 18–19. Sandberg walked toward Zahourek and asked, "Do you want to confirm, make sure that's all good." *Id*. ¶ 22. Sandberg walked back to the police cruiser and told the plaintiff, "I'm going to call and make sure that all three ok we[']re just confirming." *Id*. ¶ 23. The plaintiff asked Sandberg why Zahourek was searching her car and Sandberg responded "[H]e's not we[']re trying to, we were gonna try to get it into a safe spot." *Id*. ¶¶ 24–25. Sandberg then yelled to Zahourek "Hey Stack, Stack different D.O.B." *Id*. ¶ 26. Zahourek said to the plaintiff, "My apologies go ahead and step out, wrong date of birth that's not you." *Id*. ¶ 27. The plaintiff's breast was exposed as she stepped out of the police cruiser because of how she was handcuffed. *Id*. Sandberg looked up the plaintiff's driver's license on the cruiser's computer, and the plaintiff, upon seeing the information pop up, said "that's me." *Id*. ¶ 28. Sandberg asked her if she had a daughter named Maria; the plaintiff stated that she did not. *Id*. Zahourek said that the prior owner of the vehicle

had the same name as the plaintiff, though she disagreed. *Id*. ¶ 29. Sandberg told her, "Yeah for

whatever reasons that hit was attached to your license[ ] plate its [sic] probably an error like a

clerical error with the DMV because the [sic] attached that lady to you." *Id*. ¶ 30.

Following this encounter, the plaintiff filed a complaint with the APD. *Id*. ¶ 31. The

internal affairs department found the officers "to have violated several of plaintiff's

constitutional rights and [APD] policies, rules, and procedures." *Id*.

The plaintiff filed this lawsuit on June 18, 20242023. *Id*. This motion followed.

## ANALYSIS

The defendants move to dismiss three of the plaintiff's claims for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The standard for evaluating those

arguments is oft-repeated and well-known. "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id*. Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not

nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519

F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Legal conclusions are not

entitled to the assumption of truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214

(10th Cir. 2011), and "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The ultimate duty of the

Court is to "determine whether the complaint sufficiently alleges facts supporting all the

elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

When considering the plaintiff's allegations, the Court construes her complaint "liberally" and holds her "to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). But the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). As such, if the Court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail," it will do so "despite the plaintiff's failure to cite proper legal authority, h[er] confusion of various legal theories, h[er] poor syntax and sentence construction, or h[er] unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

There is a threshold issue here. Generally, a court considers only the facts alleged in a plaintiff's complaint when ruling on a Rule 12 motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Consideration of other materials usually requires conversion to a motion for summary judgment. Fed. R. Civ. P. 12(d). As with any general rule, though, there are exceptions. Relevant here, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002)

(quotation marks omitted). Both sides ask the Court to consider information outside of the complaint.

The plaintiff attaches to her response: (1) an email from the APD Internal Investigations Bureau, (2) two pages from a manual that the plaintiff describes as the APD Directives Manual, (3) another document that consists of two pages that the plaintiff states are from the APD Directives Manual, (4) two pages from a document that says "DM 06.01 Arrest Procedure" at the top, and the plaintiff states these are also pages from the APD Directives Manual, and (5) an email from a Senior Risk Manager for the City of Aurora. ECF No. 35-1. None of these materials are properly considered here.

No manual, for example, is referenced in the complaint, nor is one central to the plaintiff's claims. Accordingly, the manual excerpts are not properly considered on this motion. The email from the APD Internal Investigations Bureau is not referenced directly in the complaint, although the plaintiff does allege that she filed a complaint with APD Internal Affairs and that the "Defendants were found to have violated several of plaintiff's constitutional rights and [APD] policies[,] rules and procedures." ECF No. 1 ¶ 31. Given that the email is not directly referenced in the complaint and that redundant allegations in the complaint must be accepted as true for this motion, *Iqbal*, 556 U.S. at 678, there is no need to consider the email. As for the email from the City of Aurora's Senior Risk Manager, the complaint does not reference it, and its inclusion in the motion response appears "to be attempting to steer the discussion and analysis in the [m]otion to one which focuses on the disputed evidence standard under Rule 56, as opposed to the plausibility pleading standard under Rule 8 and assessed on a Rule 12 motion to dismiss." *Rustgi v. Reams*, 536 F. Supp. 3d 802, 813 (D. Colo. 2021). In short, the plaintiff's proffered exhibits are not subjects of proper consideration on this motion.

The defendants attach Zahourek's and Sandberg's body-worn camera ("BWC") footage, ECF Nos. 27-1, 27-2, which is mentioned in the complaint. ECF No. 1 ¶ 8. The plaintiff appears to have relied on the footage in drafting her complaint, given that she quoted from the BWC's recording of the officers' cruiser before they stopped her, ECF No. 1 ¶ 3, and a conversation between the officers she could not have heard. *Id*. ¶ 22. "Neither side appears to challenge the video[s'] authenticity." *Est. of Ronquillo by & through Est. of Sanchez v. City & Cnty. of Denver*, No. 16-cv-01664-CMA-KMT, 2016 WL 10843787, at *2 (D. Colo. Nov. 17, 2016), *aff'd*, 720 F. App'x 434 (10th Cir. 2017). Indeed, the plaintiff explicitly invokes the video in her response. ECF No. 35 at 2, 6, 8–11. As such, "the authenticity of the recordings is not in dispute," and "the Court can consider the BWC recordings without converting the motion to a summary judgment motion." *Pittman v. City of Aurora*, No. 19-cv-01947-PAB-NRN, 2020 WL 6586659, at *4 (D. Colo. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6585841 (D. Colo. Nov. 10, 2020); *see Strepka v. Thompson*, No. 18-cv-02557-RBJ-STV, 2019 WL 5790710, at *1 n.1 (D. Colo. July 24, 2019) (reviewing video evidence in ruling on a motion to dismiss where footage was referenced in the complaint), *recommendation adopted*, 2019 WL 4316523 (D. Colo. Sept. 12, 2019), *aff'd*, 831 F. App'x 906 (10th Cir. 2020). "In so doing, the Court views the video in the light most favorable to Plaintiff, except where the video 'blatantly contradicts' Plaintiff's version of the events." *Est. of Ronquillo*, 2016 WL 10843787, at *2 (quoting *Thomas v. Durastanti*, 607 F.3d 655, 672 (10th Cir. 2010)).

## I.    Fourteenth Amendment Claims Against Officers in Their Individual Capacities

## A.  Equal Protection

The plaintiff invokes the Equal Protection Clause of the Fourteenth Amendment's admonition that "no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated

alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotation

marks omitted). To state an equal protection claim under Section 1983, a plaintiff must allege

facts showing that she belongs to a class of people being treated differently from similarly-

situated individuals not in that class. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 688–89 (10th Cir.

2012).

Here, the plaintiff offers only her allegation that she is "a Mexican American woman"

and a conclusion that she was stopped due to her race. ECF No. 1 ¶¶ 1, 50. That will not do.

Because the plaintiff's claim is based on racially selective law enforcement, she "must

demonstrate that the defendant[s'] actions had a discriminatory effect and were motivated by a

discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir.

2003). "The discriminatory purpose need not be the only purpose, but it must be a motivating

factor in the decision." *Id*. "Discriminatory effect can be demonstrated with evidence of different

treatment toward similarly situated individuals of another race or by relying on statistical

evidence." *Russell v. City & Cnty. of Denver*, 643 F. Supp. 3d 1221, 1240 (D. Colo. 2022) (citing

*United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001)). But the plaintiff offers no

allegations regarding the treatment of similarly-situated individuals who are not Mexican

American women. Instead, she offers only a conclusion that her "race and sex [were] motivating

factor[s]" in the officers' decisions. ECF No. 1 ¶ 35. This is the sort of conclusory statement the

Court cannot credit, *Iqbal*, 556 U.S. at 678, and, as a result, the plaintiff fails to state an equal

protection claim. *Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1304 (D. Colo. 2025).

## B. Due Process

The Fourteenth Amendment also provides that no person shall be deprived of "life,

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]he

touchstone of due process is protection of the individual against arbitrary action of government . . . whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (internal quotation marks omitted). To the extent the complaint alleges a claim that the officers violated her due process rights, ECF No. 1 ¶ 16, it fails.

First, "[i]n the absence of an underlying substantive right, the Fourteenth Amendment's due process clause doesn't create a protected interest in procedure alone." *Hoskins v. Withers*, 92 F.4th 1279, 1297 (10th Cir. 2024). This means that an allegation of "entitlement to nothing but procedure cannot be the basis for a liberty or property interest." *Stein v. Disciplinary Bd. of Sup. Ct. of NM*, 520 F.3d 1183, 1192 (10th Cir. 2008) (quotation marks omitted). To the extent the plaintiff offers nothing more than a bald assertion of violation of her procedural due process rights, ECF No. 1 ¶ 16, that is insufficient.

Second, "[a] violation of substantive due process may arise in two ways—from (1) legislative acts that infringe on a fundamental right, or (2) official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019). The plaintiff does not allege any legislative acts. Nor does she allege conscience-shocking official conduct. "In evaluating cases of police action, the Supreme Court has directed that [courts] consider whether the challenged conduct bears a 'reasonable justification in the service of a legitimate governmental objective' or if instead it might be 'characterized as arbitrary, or conscience[-]shocking.'" *Id*. (quoting *Lewis*, 523 U.S. at 847). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id*. (quotation marks omitted). Here, the closest allegation the plaintiff has is that the

officers touched her inappropriately while conducting a pat-down, ECF No. 1 ¶¶ 17, 29, 35–37,

but the BWC footage shows no such thing. ECF No. 27-2 at 2:25–2:38. As a result, to the extent

the plaintiff's complaint includes a due-process claim, it fails to allege sufficient facts to support

it. *See Lindsey*, 918 F.3d at 1116 (affirming dismissal of due process claim against officers

relating to traffic stop that resulted in high-speed chase).

### C. Qualified Immunity

The defendants add a layer to their motion to dismiss, asserting that qualified immunity

applies here. ECF No. 27 at 5. Under that doctrine, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To

overcome the defense, "the onus is on the plaintiff to demonstrate (1) that the official violated a

statutory or constitutional right, and (2) that the right was clearly established at the time of the

challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022) (quotation

marks omitted). To pass scrutiny under the first prong on a Rule 12(b)(6) motion "the plaintiff

'must allege facts sufficient to show (assuming they are true) that the defendants plausibly

violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017)

(quoting *Robbins*, 519 F.3d at 1249). Courts may address the prongs in any order, *Weise v.

Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010), and a failure "to establish either prong of the two-

pronged qualified-immunity standard" means "the defendant prevails on the defense." *A.M. v.

Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016) (citations omitted).

Here, as described above, the plaintiff failed to plead a Fourteenth Amendment violation

against either Sandberg or Zahourek in their individual capacities. That failure entitles these

defendants to qualified immunity. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018).

As a result, the Court need not consider whether the rights were clearly established at the time of

the challenged conduct. *Holmes*, 830 F.3d at 1134–35.

Because the defendants are entitled to qualified immunity, the Court recommends

dismissal of the individual-capacity Fourteenth Amendment claims against Sandberg and

Zahourek be with prejudice. *Vreeland v. Olson*, No. 20-cv-02330-PAB-SKC, 2021 WL 4237269,

at *5 n.7 (D. Colo. Sept. 16, 2021); *see Lamle v. Eads*, 134 F.4th 562, 567 (10th Cir. 2025)

(affirming "dismissal with prejudice because" defendant was "entitled to qualified immunity on

the claim for damages").

## II.    Fourth Amendment Search[1] and Seizure Claims Against Officers in their Individual Capacities

The plaintiff's second and third claims invoke the Fourth Amendment, which provides

that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. To state a

claim for an unlawful search or seizure under the Fourth Amendment, a complaint must allege

facts plausibly demonstrating that there was an unreasonable search or seizure. *See Brower v.*

*Cnty. of Inyo*, 489 U.S. 593, 599 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The plaintiff

alleges that Zahourek handcuffed and searched her after a traffic stop. ECF No. 1 ¶¶ 16–17. But

nothing she alleges makes his conduct cross the line to become unreasonable.

---

[1] In her response, the plaintiff argues that the officers illegally searched her vehicle, ECF No. 35
at 15, but she does not allege that in her complaint. Instead, the complaint offers only a vague,
conclusory allegation that her "property" was searched. ECF No. 1 ¶ 57. On a motion under Rule
12(b)(6), a district court is limited to "the allegations within the four corners of the complaint,"
*Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994), meaning that a plaintiff "cannot amend
her complaint by adding factual allegations in response to Defendant's motion to dismiss."
*Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola
v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)). Accordingly, the Court does not address a Fourth
Amendment claim relating to a search of the vehicle.

The reasonableness of a search or seizure depends on whether, objectively, the challenged action was justified under the circumstances. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011); *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993). That inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation marks omitted). For a routine traffic stop, the principles of *Terry v. Ohio*, 392 U.S. 1 (1968), for investigative detentions, considering "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place" apply. *United States v. Wilson*, 96 F. App'x 640, 643 (10th Cir. 2004) (quotation marks omitted).

Under those principles, "[a] traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). The complaint alleges that the officers drove by the plaintiff's car while she was at a gas station and, after she pulled out of the gas station, pulled her over. ECF No. 1 ¶¶ 1–3. After they did so, Zahourek told the plaintiff upon his approach that she had no front license plate. *Id.* ¶¶ 3, 7; ECF No. 27-2 at 0:59–1:00. Under Colorado law, license plates must be attached to the front and rear of a vehicle. Colo. Rev. Stat. § 42-3-202(1)(a)(I). The traffic stop was therefore justified at its inception. *See Moyer v. City of Alamosa, 425 4th St., Colorado, 81101*, No. 06-cv-01388-ZLW-KLM, 2007 WL 9735370, at *2 (D. Colo. Aug. 29, 2007) (teaching that an officer's knowledge of expired license plates was a reasonable ground to perform a traffic stop).

The plaintiff protests. She argues first that the stop was not justified because she had committed no traffic violation. ECF No. 1 ¶ 3. But her own complaint concedes that Zahourek

stated an objectively reasonable reason for the traffic stop. *Id.* ¶ 7. She alleges no facts rebutting

this. To be sure, in her response, she protests that the officers knew of no traffic violation until

after the stop. ECF No. 35 at 10. But that misses the mark for multiple reasons. First, that

allegation is not in her complaint, and a plaintiff "cannot amend her complaint by adding factual

allegations in response to Defendant's motion to dismiss." *Abdulina*, 79 F. Supp. 3d at 1206.

Second, it lacks plausibility: the plaintiff never elaborates on what facts could give her such

insight into the officers' minds to support this assertion. And third, it is belied by the BWC

footage showing that Zahourek provided the front-plate rationale before reaching the front of the

plaintiff's vehicle. ECF No. 27-2 at 0:59–1:00. Her allegations that the cruiser drove by her

vehicle and the officers leered at her while she was at a gas station, ECF No. 1 ¶¶ 1–3, far from

contradicting this rationale, afford the officers the opportunity to have observed it. The plaintiff

also argues that the defendants have provided no documentary proof of her speed prior to pulling

her over. ECF No. 35 at 11. But she gives no reason why that is required; the observation of the

missing front plate would alone justify the stop.

     The plaintiff also complains that the officers spoke of her "taking off with the quickness"

prior to initiating the stop and, thus, their articulated reason must have been pretextual. ECF No.

1 ¶ 3. But "the Fourth Amendment regulates conduct rather than thoughts," *al-Kidd*, 563 U.S. at

736, and therefore the "standard for evaluating the validity of a traffic stop is objective, rather

than subjective." *Winder*, 557 F.3d at 1135. Thus, the Court's "sole inquiry is whether this

particular officer had reasonable suspicion that this particular motorist violated 'any one of the

multitude of applicable traffic and equipment regulations' of the jurisdiction." *United States v.

Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (quoting *Delaware v. Prouse*, 440 U.S. 648,

661 (1979)). "Once an officer observes a traffic or equipment violation, a *Terry* stop is

objectively justified, regardless of the detaining officer's subjective motives." *Winder*, 557 F.3d

at 1135. That justification exists here. As a result, the plaintiff's allegations of differing

subjective motives are not relevant to the initial-stop analysis.

Of course, even a traffic stop justified at its inception must have a "resulting detention"

that "was reasonably related in scope to the circumstances that justified the stop in the first

place." *United States v. Valenzuela*, 494 F.3d 886, 888 (10th Cir. 2007). In a routine traffic stop,

for instance, an officer "may request a driver's license, vehicle registration and other required

papers, run necessary computer checks, and then issue any warning or citation." *United States v.*

*Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005). That is how this stop began: the officers

approached and asked for her driver's license. ECF No. 1 ¶¶ 8–10.

Following that, based on a computer check, the officers handcuffed the plaintiff,

conducted a pat-down, and placed her in the back of the cruiser. Under the circumstances, such

measures were reasonable. "The Supreme Court has long allowed de minimus intrusions on the

liberty of a person detained by a *Terry* stop to advance officer safety, such as a frisk for weapons

or a request to step out of the car during a traffic stop." *United States v. Melendez-Garcia*, 28

F.3d 1046, 1052 (10th Cir. 1994) (citing *Terry*, 392 U.S. at 27; *Pennsylvania v. Mimms*, 434 U.S.

106, 111 (1977) (per curiam)). "However, the use of force such as handcuffs and firearms is a far

greater level of intrusion, and requires the government to demonstrate that the facts available to

the officer would warrant a man of reasonable caution in the belief that the action taken was

appropriate." *Id*. (quotation marks omitted). Here, while the plaintiff was still in her vehicle, the

officers told her that she had outstanding arrest warrants. ECF No. 1 ¶¶ 10–12. They then told

her to exit her vehicle, handcuffed her, patted her down, and had her sit in the back seat of their

cruiser. *Id*. ¶¶ 15–18. Such a detention is a standard method of effecting an arrest. *See, e.g.,*

*Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006) (noting that "[s]tandard police practice

called for cuffing an arrestee's hands behind her back"); *United States v. Ebert*, No. 09-40043-

JAR, 2009 WL 2989966, at *2 (D. Kan. Sept. 16, 2009) (teaching that a "pat-down search . . .

conducted after and incident to . . . arrest" is "an appropriate search incident to arrest").

        To be sure, this was a case of mistaken identity, as opposed to a valid warrant for the

plaintiff's arrest. The BWC footage and the plaintiff's allegations make clear that prior to exiting

the cruiser and approaching the plaintiff's vehicle, the officers ran the license plate information

from the plaintiff's vehicle and were alerted to outstanding warrants for someone associated with

the vehicle. But where "the officers' mistake was understandable and the arrest a reasonable

response to the situation facing them at the time," an arrest and search can be valid because

"[s]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth

Amendment." *Hill v. California*, 401 U.S. 797, 804 (1971). Here, it was. The plaintiff was

detained until Sandberg verified that her date of birth did not match the person who had

outstanding arrest warrants. When Sandberg realized the error, he stated: "My apologies go

ahead and step out, wrong date of birth that's not you." ECF No. 1 ¶ 27. The BWC footage

shows that the entire encounter lasted only a few minutes. *See* ECF No. 27-2. As such, "the

officer's mistake as to the identity was reasonable under the circumstances facing him or her at

the time of the [detention]." *Jama v. City & Cnty. of Denver*, No 08-cv-01693-MSK-KLM, 2010

WL 3615027, at *6 (D. Colo. Sept. 9, 2010). Even "a detention of three days over a New Year's

weekend" has been held to "give[] rise to no claim under the United States Constitution" where

grounded in a reasonable mistake of identity based on a validly-issued warrant. *Baker v.

McCollan*, 443 U.S. 137, 144–45 (1979); *see Sosa v. Martin Cnty., Fla.*, 57 F.4th 1297, 1302

(11th Cir. 2023) (finding no due process claim when plaintiff "was arrested on a valid warrant

and held for only three days"); *see also Morales v. City of Hobbs*, No. 18-130 SCY/KK, 2018
WL 4685577, at *6 (D.N.M. Sept. 28, 2018) (concluding that "despite Plaintiff's protests of
mistaken identity, [officer] had no duty to investigate her claims of mistaken identity before
effectuating her arrest").

Analogizing to a warrantless arrest further supports this conclusion. A warrantless arrest
is permissible when an officer "has probable cause to believe that a person committed a crime."
*Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and
circumstances within the arresting officer's knowledge and of which he or she has reasonably
trustworthy information are sufficient to lead a prudent person to believe that the arrestee has
committed or is committing an offense." *Jones v. City & Cnty. of Denver, Colo.*, 854 F.2d 1206,
1210 (D. Colo. 1988). When a warrantless arrest is the subject of a Section 1983 action, the
defendant arresting officer is "entitled to immunity if a reasonable officer could have believed
that probable cause existed to arrest" the plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).
Here, the officers analogously mistook the plaintiff for the person with outstanding warrants
whose identity was associated with the vehicle. But "[e]ven law enforcement officials who
'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity."
*Hunter*, 502 U.S. at 227 (quoting *Anderson*, 483 U.S. at 641).

Nor do the Internal Affairs findings the plaintiff alleges change the calculus. ECF No. 1
¶ 31. For one thing, "[i]t is irrelevant, for purposes of Fourth Amendment review, whether the
stop in question is sufficiently ordinary or routine according to the general practice of the police
department or the particular officer making the stop." *Botero-Ospina*, 71 F.3d at 787 (internal
quotation marks omitted). That is true even if the department's operating procedure "required
precisely what the law required" of an officer, *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir.

2005), because a department's own assessment of whether an officer violated its internal rules is "confusing," "needless" and "fruitless" to the ultimately constitutional inquiry. *Id.* at 1164–65. For another, the plaintiff never specifies what constitutional violations Internal Affairs found, or even if they relate specifically to her claims at issue in this lawsuit. *See* ECF No. 1. ¶ 31.

The short of it is that the complaint does not plausibly allege a constitutional violation in the execution of the stop. Without one alleged, the officers are entitled to qualified immunity.

They have another reason for that entitlement. To overcome that defense, the plaintiff must establish that "the right was clearly established at the time of the challenged conduct." *Surat*, 52 F.4th at 1270–71 (quotation marks omitted). The plaintiff asserts that the law clearly establishes a duty to investigate before making a warrantless arrest, ECF No. 35 at 7, and that officers "may not ignore easily accessible evidence and thereby delegate their duty to investigate" to others. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998). But a "plaintiff" must "demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited" to carry her burden. *Id.* at 1255–56 (quotation marks omitted). She does not. This case is not a warrantless arrest of an alleged shoplifter, *id.* at 1256–60; indeed, it is not warrantless at all — it is a mistaken-identity detention based on a validly-issued (for aught that appears) warrant. Even in a warrantless arrest, an officer is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest" the plaintiff. *Hunter*, 502 U.S. at 228. And in the mistaken identity context, even "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence" that lasts for "three days over a New Year's weekend does not and could not amount to" a constitutional deprivation. *Baker*, 443 U.S. at 145.

The short of it is that while the plaintiff is "not required to show that the very conduct in question has previously been held unlawful," she is "required to demonstrate the unlawfulness was 'apparent' in light of established law." *Baptiste*, 147 F.3d at 1255. She has not. As a result, her Fourth Amendment claims against the officers in their individual capacities must be dismissed with prejudice because Sandberg and Zahourek are entitled to qualified immunity.

### III.    Fourth Amendment[2] Excessive Force Claims Against Zahourek in his Individual Capacity

The defendants also seek dismissal of the plaintiff's excessive-force claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 27 at 10–11. To the extent the plaintiff alleges that Zahourek used excessive force with his pat-down, ECF No. 1 ¶ 17, these allegations are clearly contradicted by the BWC footage, which show no such excessive force. ECF No. 27-2 at 2:25–2:38. To the extent the plaintiff asserts an excessive-force claim based on the manner of her handcuffing, such a claim "requires the plaintiff to show both that the force used was more than reasonably necessary and some non-de minimis actual injury." *Donahue v. Wihongi*, 948 F.3d 1177, 1196–97 (10th Cir. 2020) (quotation marks omitted). She alleges no such injury. Finally, to the extent the claim is based on handcuffing alone, it fails because the officers reasonably believed that there was an outstanding warrant and "in nearly every situation where an arrest is authorized, or police reasonably believe public safety requires physical restraint, handcuffing is appropriate." *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009).

Because the plaintiff has failed to allege an excessive force claim, defendant Zahourek is entitled to qualified immunity.

---

[2] The plaintiff mentions the Eighth Amendment in paragraph 17 of her complaint, but an allegation that an officer used excessive force during a seizure is properly analyzed under the Fourth Amendment's objective reasonableness standard. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (citing *Graham*, 490 U.S. at 395).

### IV.    Official Capacity Claims Against Sandberg and Zahourek

The officers challenge the plaintiff's claims against them in their official capacities because such claims are redundant of the claims brought against the City of Aurora. ECF No. 27 at 12. The plaintiff disavows any official-capacity suit against Sandberg and Zahourek. ECF No. 35 at 18. As a result, claims against the defendants in their official capacities are waived. *See Jordan v. Forbes*, No. 19-cv-02660-RM-SKC, 2021 WL 2792336, at *3 (D. Colo. Apr. 22, 2021) (declining to address official-capacity claims because plaintiff affirmed that he only brought individual-capacity claims), *recommendation adopted*, 2021 WL 2201336 (D. Colo. Jun. 1, 2021), *reconsideration denied*, 2021 WL 6774477 (D. Colo. Oct. 5, 2021), *appeal dismissed for lack of prosecution*, 2022 WL 3025586 (10th Cir. Mar. 1, 2022).

In all events, the analysis of those claims would be the same as that of the plaintiff's claims against defendant City of Aurora. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *see Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988) ("[A section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."). As a result, to the extent the District Judge considers them, the Court recommends the same disposition.

### V.    Municipal Liability

In addition to the officers, the plaintiff brings each of her claims against the City of Aurora. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Instead, a municipality or local government "may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at

692). The plaintiff therefore must allege facts that show "(1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). This means the plaintiff must allege both a constitutional deprivation and the existence of a "municipal policy or custom." *Connick*, 563 U.S. at 60-61; *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). As discussed above, the plaintiff failed to allege a constitutional violation by Sandberg or Zahourek. As a result, the claims against the City of Aurora are subject to dismissal.

Consideration of the second prong further supports dismissal. A "municipal policy or custom" may take one of the following forms: "(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted).

Here, the plaintiff alleges that the City of Aurora's "failure to train and/or supervise . . . was a legal and proximate cause of" her injuries. ECF No. 1 ¶¶ 40, 51, 62. But "[a] municipality's liability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Thus, "[t]o satisfy the stringent deliberate indifference standard, '[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.'" *Waller*, 932 F.3d at 1285 (quoting *Connick*, 563 U.S. at 62). This is because

"[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *Connick*, 563 U.S. at 62). As a result, "[e]vidence of a pre-existing pattern of violations is only unnecessary in a narrow range of circumstances, however rare, in which the unconstitutional consequences of a failure to train are highly predictable and patently obvious. *Id.* (quotation marks omitted). The plaintiff neither includes allegations regarding a pattern of similar constitutional violations by untrained employees nor facts plausibly alleging that this case falls within the narrow range of circumstances in which such allegations would not be required. As a result, the plaintiff's claims against defendant City of Aurora should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

The plaintiff demurs. She states that an internal investigation found that the officers violated APD policies. ECF No. 35; *see* ECF No. 1 ¶ 31. But a plaintiff who "relies on an Internal Affairs finding that" an officer "violated" department "policies and procedures" does the "opposite" of "identif[ying] an official policy or unofficial custom which is the moving force behind the constitutional violation." *McKinley v. Yarber*, No. 3:15CV50-DPJ-FKB, 2015 WL 6554772, at *2 (S.D. Miss. Oct. 29, 2015). As such, this does not state a failure to train claim.

## VI.    State Tort Claims

The defendants challenge the plaintiff's fourth claim for defamation, libel, and slander pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the plaintiff failed to assert that she filed a notice of claim pursuant to Colo. Rev. Stat. § 24-10-109. ECF No. 27 at 14–15. But under 28 U.S.C. § 1367(c)(3), when all "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). All federal claims are recommended to be dismissed. Accordingly, the Court respectfully recommends that the District Judge decline to exercise

supplemental jurisdiction and dismiss the state-law claims without prejudice for lack of subject-matter jurisdiction. *Ascent Classical Acads. v. Ascent Classical Acad. Charter Schs., Inc.*, No. 24-cv-00653-GPG-STV, 2025 WL 861216, at *4 (D. Colo. Mar. 19, 2025).

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), ECF No. 27, be **GRANTED** and that the individual-capacity Fourth and Fourteenth Amendment claims against Sandberg and Zahourek be **DISMISSED with prejudice** and all remaining claims be **DISMISSED without prejudice**.[3]

Respectfully submitted this 15th day of August, 2025, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge

---

[3] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). <u>Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.</u>